IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 7, 2022

## MARLEZ WILSON a/k/a MARLEZ WRIGHT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 17-03797, 18-01878    James M. Lammey, Judge**

_____

### No. W2022-00024-CCA-R3-PC

_____

Petitioner, Marlez Wilson a/k/a, Marlez Wright, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in concluding that he received the effective assistance of counsel.  Following our review of the entire record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER, and JOHN W. CAMPBELL, SR., JJ., joined.

Roberto Garcia, Memphis, Tennessee, for the appellant, Marlez Wilson a/k/a Marlez Wright.

Herbert H. Slatery III, Attorney General and Reporter; and Katharine K. Decker, Senior Assistant Attorney General, Amy Weirich, District Attorney General, Justin Prescott, Assistant Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On August 17, 2017, Petitioner was indicted for first-degree murder and attempted especially aggravated robbery. On September 23, 2019, he pled guilty to second-degree murder and attempted especially aggravated robbery and agreed to serve an out-of-range sentence of thirty years as a multiple offender at 100 percent for the murder conviction and a concurrent twelve-year sentence at thirty percent for the robbery conviction.

On September 16, 2020, Petitioner filed a *pro se* petition for post-conviction relief claiming that his trial counsel was ineffective for failing to appeal his thirty-year sentence for his murder conviction alleging that the day after he pled guilty, he sent counsel a letter requesting him to appeal his sentence. Post-conviction counsel was appointed, and an amended petition was filed on September 21, 2021, again claiming *inter alia* that trial counsel was ineffective for failing to appeal Petitioner's thirty-year sentence for the second degree murder conviction. Following a hearing, the post-conviction court denied the petition in an order filed December 6, 2021. Petitioner filed a timely notice of appeal on January 5, 2022.

*Plea Hearing*

The facts of this case, as set forth by the State at Petitioner's guilty plea hearing, are as follows:

> If these matters had proceeded to trial the State's proof would have been that on March 29th of 2017 at the Camelot Apartments here in Shelby County, Tennessee, Michael Grace and [Petitioner], who we now also know[] as Marlez Wright and two other unknown individuals had essentially made a plan to go rob Kejohn Holmes of some cash and a little dope he might be carrying.
>
> Mr. Grace, I guess essentially pretended to hang out with Kejohn Holmes and had him at a certain location and was going to pretend to be one of the robbery victims.
>
> An S.U.V. driven by two other unindicted individuals and [Petitioner] in the back seat of this S.U.V. pull into the wrong driveway, stop in front of the stoop of an apartment complex where Mr. Holmes was and where Mr. Grace was hanging out with him.

We know that there was some conversation, but literally seconds, Mr. Wilson leans out the back window and starts shooting at Mr. Holmes. Mr. Holmes runs off, but he is unable to make it more than a few yards and lays on the sidewalk and dies.

Mr. Grace was brought in and immediately he gave a statement. [Petitioner] was implicated and when he was brought in he did give a statement of admission to being there, being part of the plan, that he fired, he didn't intend to hit, or didn't know if he hit anyone.

T.B.I. would tell us that there was only one ballistics out there, two bullets, both from the same firearm, essentially what it comes down to.

And we have some grainy video of the vehicle and Mr. Grace's testimony would be that the shooter was in the back seat and [Petitioner] was the only person in the back seat.

[Petitioner] leaned out the back seat window to shoot the victim. Mr. Grace hopped into the vehicle with the three of them, making it four and they fled the scene.

After the trial court informed Petitioner that he would have been entitled to an appeal had he proceeded to trial, Petitioner advised the court that he wanted to waive that right and accept the plea offer. The court found that Petitioner was entering the guilty pleas freely and voluntarily, knowingly, and intelligently, and accepted his pleas and sentenced Petitioner pursuant to the agreement.

*Post-Conviction Hearing*

At the post-conviction hearing, Petitioner testified that he met with trial counsel three times and that trial counsel told him at their last meeting that he "might as well take a 30 instead of going to trial and losing and getting life." Petitioner claimed that trial counsel explained his plea offer "halfway" and that trial counsel did not mention that is it not a mandatory requirement for a life sentence for minors. Petitioner confirmed that he received and reviewed discovery, but "[n]ot one time did we discuss anything in my discovery packet." Petitioner testified that on September 24, 2019, after he pled guilty, he sent trial counsel a letter asking trial counsel to appeal Petitioner's thirty-year sentence. A copy of the letter was exhibited to the hearing and reads in part, "Even though I pled guilty, I still want to appeal my sentence. You told me that you will appeal my sentence." Trial counsel did not file a notice of appeal.

-3-

On cross-examination, Petitioner agreed that during the plea colloquy, he acknowledged that he was charged with first-degree murder; he understood he was pleading guilty to second degree murder with a thirty-year sentence to be served at 100 percent out-of-range; he had discussed the plea with his attorney and with his family and had reviewed the petition of waiver and acceptance of plea with his attorney; trial counsel had reviewed discovery with him and he was satisfied with trial counsel's representation; and he had seen the video of himself shooting the victim.

Trial counsel testified that he had been practicing law in Tennessee for almost forty-one years. He had tried 100 to 200 jury trials, and at the time of the hearing, he was representing defendants in twelve pending murder cases on post conviction.

Trial counsel recalled that Petitioner was fifteen years old at the time of the offenses but was charged as an adult and was facing a potential life sentence for first-degree murder. Upon receipt, trial counsel provided discovery "immediately to [his] client's grandfather" and also gave a copy to Petitioner. He met with Petitioner and went over the facts of the case so he could "properly investigate it." He then immediately went to the scene so he could "have as clear a picture as possible of where this took place." Trial counsel recalled that there was video evidence of the offense, that a co-defendant would be testifiying against Petitioner at trial, and that "one very disturbing allegation with respect to [Petitioner] was that he told the investigators that 'he got some cool points for shooting this man.'" Trial counsel informed Petitioner that uncorroborated testimony of a co-defendant was insufficient to convict him, but there was "plenty of other evidence" that supported the charges, including ballistics, a video, and witnesses.

Trial counsel filed a motion to suppress in the matter and after that motion was heard, the State left the potential thirty-year offer on the table. Trial counsel also explained that "[t]here's some flux in the law with respect to whether the law allows a life sentence to be imposed upon a minor, but the law is unsettled in that regard." He discussed that issue with an experienced colleague and determined even if Petitioner had gone to trial and been convicted of first-degree murder, "he would in all likelihood would have received a sentence in excess of what he received even if it wasn't a life sentence." Trial counsel had "ongoing discussions" with Petitioner and Petitioner's grandfather about these sentencing issues.

Trial counsel testified and detailed his extensive preparations for trial and the involvement of Petitioner's grandfather. Trial counsel had telephone and in-person conversations with Petitioner's grandfather, "who was virtually here every time we had court." On the day before trial, trial counsel took Petitioner's grandfather and a witness back to the scene of the crime "so we could reconstruct what was going on so that it would be fresh in everybody's mind." After taking Petitioner's grandfather back home, trial

counsel then traveled to the penal farm where he met with Petitioner, gave him a trial notebook, reviewed the trial notebook with Petitioner, and went over the trial process with Petitioner. They discued the "most damaging evidence against [Petitioner]," the video and testimony of Petitioner's co-defendant, as well as the requirements of accomplice testimony regarding the co-defendant. They also discussed Petitioner's right to testify, and trial counsel recommended that Petitioner not testify.

Concerning Petitioner's claim that he sent trial counsel the letter requesting him to appeal his sentence, trial counsel testified he had first seen the letter the morning of the post-conviction hearing. Trial counsel denied ever receiving the letter, and explained what he would have done had he received the letter. The following exchange took place:

> [Prosecutor]:          Did [Petitioner] ever communicate afterwards, after his guilty plea that he wanted to appeal?
>
> [Trial counsel]:      I saw what you handed me this morning, but this is the first time that I have seen this letter. He says that it was addressed to me at my office. I kept in regular touch with him as well as his grandfather. Had I received this letter, I was thinking about what I'd do, it says, "Appeal my sentence."
>
> The first thing I would have done would have been to alert the Court to this. It's dated the day after the guilty plea, so, I'm real curious about that. Usually somebody lets the ink get dry on the guilty plea first before they decide I don't want the plea. But I would have alerted his grandfather, alerted the Court, come back in here, brought [the prosecutor] in here and at the very least scheduled some type of hearing or review of that.
>
> It doesn't tell me to appeal his conviction. It tells me to appeal his sentence. But I didn't see this.

Following the hearing, the post-conviction court made oral findings and denied Petitioner's request for post-conviction relief in a written order incorporating its oral findings of fact and conclusions of law. In its ruling, the post-conviction court "put a lot of weight in what [trial counsel] had to say." The court found that, had trial counsel received the alleged letter from Petitioner requesting him to appeal his sentence, "he would have at least brought it to everyone's attention that we needed to perhaps bring in [Petitioner] and explain to him a little bit more perhaps." The court was "not convinced that [Petitioner] sent this letter." The court stated, "And I want to be clear, I don't believe this letter was ever sent to [trial counsel]." The court also stated that trial counsel went "above and beyond" in this case. The post-conviction court also found the appeal would

not have been succesful based on the proof in the case which included corroboration of accomplice testimony. The court also found Petitioner knew about the deadline to file a post-conviction petition, and as such, he could have filed a *pro se* appeal. The court concluded that there was no deficient performance and denied the petition for post-conviction relief. It is from this denial, that Petitioner now appeals.

## ANALYSIS

Petitioner contends that the post-conviction court erred in concluding that he received the effective assistance of counsel, claiming that trial counsel provided deficient performance by failing to file a notice of appeal after Petitioner sent him a letter requesting him to do so. Petitioner claims that trial counsel's failure to file a notice of appeal is presumptively prejudicial because he was denied an appeal that he otherwise would have taken. The State responds that the post-conviction court properly denied Petitioner's claim after weighing the credibility of the witnesses as the post-conviction hearing and accrediting trial counsel's testimony over Petitioner's testimony. We agree with the State.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697. Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome" of the trial. *Id.*

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger*, 279 S.W.3d at 294.

The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011). A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo review with a presumption of correctness given only to the post-conviction court's findings of fact. *Id.*

Relying on *Flores-Ortega*, Petitioner argues that trial counsel provided deficient performance because he did not file an appeal after Petitioner sent trial counsel a letter requesting the appeal. The United States Supreme Court has ". . . . long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *see Rodriquez v. United States*, 395 U.S. 327, 332 (1969). "When an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed "with no further showing from the defendant of the merits of his underlying claims." *Garza v. Idaho*, 139 S. Ct. 738, 750 (2019) (citing *Flores-Ortega*, 528 U.S. at 484).

While Petitioner claims that the day after his guilty plea was entered he sent trial counsel a letter requesting him to appeal his sentence, the post-conviction court accredited trial counsel's testimony over Petitioner's testimony that he never received the letter. The post-conviction court considered the testimony of both witnesses, stating "[] it's all here in black and white. I went over all these rights and [Petitioner] was well aware of what he was doing and he was waiving his rights away. But yet, again, he is saying he didn't." The court listened to trial counsel's testimony "about how he went above and beyond in this case," when he and Petitioner's grandfather went out to the scene the day before trial. The post-conviction court found that "[trial counsel] made it clear for the record" and apprised Petitioner "of everything that he needed to know." The court reasoned that "[trial counsel] also had his grandfather involved in this process" because "[] he was a juvenile" and "[] was doing the proper thing in not allowing him to make these decisions by himself. He had someone he trusted involved in this whole situation." Further, the court "[] put a lot of weight in what [trial counsel] had to say," finding that had trial counsel received the letter, he would have "at least brought it to everyone's attention" and brought in the Petitioner. For these reasons, the post-conviction court was not convinced Petitioner sent the letter.

Petitioner further argues that *Flores-Ortega* requires an automatic appeal by trial counsel. Petitioner specifically argues that he suffered prejudice because he was denied an opportunity to appeal his sentence. In *Flores-Ortega,* there was evidence in the record that trial counsel was aware her client had requested an appeal, yet did not file the appeal. In this case, Petitioner's reliance on *Flores-Ortega* is misplaced. The post-conviction court specifically found that because Petitioner's letter requesting an appeal was not sent or

-7-

received by trial counsel, trial counsel did not disregard a request for appeal. Furthermore, as the post-conviction court noted, the record reflects that Petitioner knew to file the post-conviction petition timely and could have filed a handwritten notice of appeal himself. The post-conviction court also found the appeal would not have been successful based on the proof in the case and noted that to find any prejudice to Petitioner, he would have to find deficient performance which he did not find.

The evidence does not preponderate against the post-conviction court's credibility findings, and as such, we properly defer to those credibility findings. Petitioner has failed to prove that he received the ineffective assistance of counsel.

Finally, we note that Petitioner's sentence was an agreed upon component of his plea. As such, the trial court discussed the terms of his sentence during the plea hearing and Petitioner testified under oath that he understood the terms and agreed to the terms. Therefore, our review of the entire record, including the plea submission hearing, affirmatively demonstrates that Petitioner's guilty plea with an out-of-range sentence was made with an awareness of the consequences, and, as such, the guilty pleas were voluntarily and knowingly entered. *See Camacho v. State*, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009) (citing S*tate v. Mackey,* 553 S.W.2d 337, 340 (Tenn.1977)). Moreover, since Petitioner's plea was knowing and voluntary and he agreed to the sentence imposed, trial counsel cannot be found to be deficient for failing to file a baseless appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JILL BARTEE AYERS, JUDGE